UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                CASE NO.

      Plaintiff,

vs.

CREED BOUTIQUE MIAMI, LLC.,
a Florida Limited Limited Liability Company,
D/B/A CREED

      Defendant,

_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

      Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, CREED BOUTIQUE MIAMI, LLC., a Florida Limited Liability Company d/b/a CREED (hereinafter referred to as "CREED"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)     This action is also brought pursuant to 28 C.F.R. Part 36.

2)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)     Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)     Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a cologne.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)    Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)    Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)    "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, CREED, is a Florida limited liability company authorized to do business and doing business in the State of Florida.

20)     Defendant, CREED, is a company that sells fragrances, body care, and accessories. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "CREED".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://creedboutique.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and

other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of December 2023, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

Creed Boutique: https://creedboutique.com/

System settings while doing the review:

*Operating system: Windows 10*

*Browser: Google Chrome v. 120.0.6099.62*

*Screen Readers: NVDA v. 2023.3*

*Assistive Technology: Level Access Assistive Technology*


List of violations encountered:


Violation 01: Within the *Promo Slider* at the top of the home page, the button for advancing onto the next promotion has a *button* audible label. The information provided by this label does not allow the user to determine what this link is about.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/yh0ibw4tysn4o2vkdvl7a/2023_12_05_184237_01.mp4?rlkey=mgmf7d8eq31ttwp3dml6d22bs&dl=0


Violation 02: Once activated, the *Sort by Featured* dropdown on results pages cannot be closed using a keyboard. The user is therefore unable to navigate away from it – effectively becoming a keyboard trap.

Applicable WCAG 2.2 Standard at Issue: Standard 2.1.2 No Keyboard Trap (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/collections/the-leather-collection?filter.p.m.fitler.gender=Women&filter.v.price.gte=&filter.v.price.lte=

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/k60j6dss786tb3u9emqn1/2023_12_05_184237_02.mp4?rlkey=mm903g6o362ob78b920g247mo&dl=0


Violation 03: When a user adds an item to their cart there is no audible label rendered. The user has no way of knowing that the action has been executed.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/products/universal-leather-sample-wallet-blue#ProductInfo-template--14749777952865__main

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/m977gdhpm2f0cuntp3r2z/2023_12_05_184237_03.mp4?rlkey=dcuaz5snril8rw4kj9xlvmqf4&dl=0


Violation 04: Focusable components do not receive focus in an order that preserves meaning and operability. When the user adds a product to their cart, the modal *View Cart* does not retain focus long enough to allow for (keyboard) operability. It disappears very quickly and focus shifts back to the product detail page.

Applicable WCAG 2.2 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/products/universal-leather-sample-wallet-blue#ProductInfo-template--14749777952865__main

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/m977gdhpm2f0cuntp3r2z/2023_12_05_184237_03.mp4?rlkey=dcuaz5snril8rw4kj9xlvmqf4&dl=0

Violation 05: When an input error is automatically detected, the item that is in error is not described to the user in an audible format. When a user inputs an incorrect email address to subscribe to the newsletter, there is no audible message describing the error.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/collections/all-home-fragrances

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/vkgs0zneonwtiaomrckxy/2023_12_05_184237_04.mp4?rlkey=ue9kw53al4rr3rcmc9he0qafi&dl=0

Violation 06: On the *Product Detail* page, when the user activates the *increase* or *decrease* quantities buttons there is no audible confirmation that the button has been activated and the corresponding request has been applied.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/products/travel-companion-citrus?variant=41032451227745

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/mk7doodm9q7hwqj4mz7cz/2023_12_05_184237_05.mp4?rlkey=iisivxsasxw00wrm2619zop7t&dl=0

Violation 07: On the *Your Cart* page, when the user activates the *decrease* quantity button there is no audible confirmation that the button has been activated and the corresponding request has been applied.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/products/travel-companion-citrus?variant=41032451227745

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/fapifl3zleguy9ozmcg0c/2023_12_05_184237_05b.mp4?rlkey=z4f047kbuw6e1od4q0yto9biw&dl=0

Violation 08: Within the *Claim your complimentary gift* modal, the buttons for adding the options presented have a *button* audible label. The information provided by this label does not allow the user to determine what this link is about.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/cart#main

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/qeyhfw05q8t3b2uccgrwo/2023_12_05_184237_06.mp4?rlkey=yyjqsshhatyvkool5kikbl9th&dl=0

Violation 09: Within the *Claim your complimentary gift* modal, when the user activates the button that adds one of the options presented there is no audible confirmation that the button has been activated and the corresponding request has been applied.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/cart#main

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/of5fa3tqp9v2k5jao3gpz/2023_12_05_184237_07.mp4?rl
key=ohf4pjmoyng7sq8iws946rx69&dl=0

Violation 10: When an input error is automatically detected, the item that is in error is not
described to the user in an audible format. When a user inputs an incorrect phone number
during the checkout process, there is no audible message describing the error.

Applicable WCAG 2.2 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

URL Where Issue Was Encountered: https://creedboutique.com/checkouts/cn/c1-
abb9f9e4cb8a3613d99501ad817f21ee/information?ew_m=f

Screen Capture Evidence:

https://www.dropbox.com/scl/fi/po2pdf1l2uupuvlydxv4g/2023_12_05_184237_08.mp4?
rlkey=gtx05nvrw533bcrxnhbft3bsk&dl=0

30)     Although the Website appeared to have an "accessibility" statement displayed and an
"accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested,
still could not be effectively accessed by, and continued to be a barrier to, blind and visually
disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted
to access the statement, thus, was unable to receive any meaningful or prompt assistance through
the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively
navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling
excluded, as he is unable to participate in the same shopping experience, with the same access to

the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)      The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)      Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)      Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)      Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)      Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)      Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)      Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

54)      Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to

ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)    The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)    Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)    The Website was subsequently visited by Plaintiff's expert in December and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable

alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Raul Marquez, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff

appropriate and necessary injunctive relief, including an order to:

i.      Require Defendant to adopt and implement a web accessibility policy to make

publicly available and directly link from the homepage of the Website to a functional

statement as to the Defendant's policy to ensure persons with disabilities have full and

equal access to and enjoyment of the goods, services, facilities, privileges, advantages,

and accommodations through the Website and the physical locations.

ii.     Require Defendant to take the necessary steps to make the Website readily

accessible to and usable by blind and visually disabled users, and during that time period

prior to the Website's being made readily accessible, provide an effective alternative

method for individuals with visual disabilities to access the information available on the

Website until such time that the requisite modifications are made, and

iii.    Require Defendant to provide the appropriate auxiliary aids such that individuals

with visual disabilities will be able to effectively communicate with the Website for

purposes of viewing and locating Defendant's stores and becoming informed of and

purchasing Defendant's products, and during that time period prior to the Website's being

designed to permit individuals with visual disabilities to effectively communicate, to

provide an alternative method for individuals with visual disabilities to effectively

communicate for such goods and services made available to the general public through

the Website and the physical stores.

iv.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses

pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned

counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)     WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.     A declaration that Defendant's website is in violation of the ADA;

b.     An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.     An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.     An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

---

[1] 

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and

shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

**Cookie Policy**

When you visit the Creed website, one or more cookies will be placed on your device or we may use JavaScript, HTML 5 and other digital technologies to collect information from your computer, mobile handset or other device. This information may contain personal data.

This policy tells you what cookies we will use and what their functions are. How we process personal data that we obtain from your device is described in our privacy notice. When you visit our website we view this as your specific request to provide you with the full functionality of the site, including but not limited with the ability to buy an item in our webstore.

**Who Is Responsible?**

The responsibility for this cookie policy lies with Creed Boutique, LLC. This legal entity are the "we" or "us" in this cookie notice. You can contact us at the address listed below.

**What Are Cookies?**

Cookies are small (temporary) text files transferred to your device so that we can remember who you are. We may also use similar digital techniques, such as JavaScript, HTML 5, device fingerprinting etc. Collectively we refer to these digital techniques as "cookies" in this cookie policy. Cookies may also recognise you on your next log-in and offer you content tailored to your preferences and interests. Cookies do not compromise the security of a website and we will not use cookies to store personal information about you that others could read or understand. We do not use cookies to track your internet usage after leaving our site except to show you tailored offers from us when you visit certain other sites.

**Why Do We Use Cookies?**

We use four types of cookies on this site which are strictly necessary for the website to function.

1. **Strictly Necessary cookies:** These may be required for system administration, to make the shopping cart and checkout process possible, to prevent fraudulent activity, assist in security issues and conform to regulations.

2. **Functionality cookies:** These are used to enhance and simplify your user experience. They may record information about previous choices you have made, remember your password, or allow video or social media content to be properly viewed on the website

3. **Analytics and Performance cookies:**

These are used to improve the speed with which we can process your request, allow us to assess the performance of a website, or to test different design ideas for the website. We often work with third party research companies to perform these services for us, so these cookies may be set by a third party. (Details of this are listed below.)

1. These cookies channel back data to our data analytics tools. If you visit our website, we can determine from which marketing channel you originated (e.g., Google AdWords, e-mail newsletter), what pages you viewed, which items you have added to your cart and which ones you bought. We also receive information on how you use and interact with our website as well as on the amount of time that you spend on it. The server of our websites also collects basic information that relates to the request that is made from your browser when you visit the websites. This data may include information on your last visit date and time, timestamp of the browser request, your IP address, basic HTTP header information (like referral URL and user agent) and previous URL that was requested by your browser.

4. **Targeting, social media, advertising and third-party cookies:** These offer the possibility to connect you to social networks and share content from our website on social media. Information that we obtain from advertising cookies is used to maintain your personal advertising profile. These cookies may be used to deliver relevant and tailored content to you.

**The actual cookies that we use are listed and described here:**

**Cookie __utmt __utma __utmb __utmc __utmz**

Optional? Yes

Purpose: Google Analytics is used to collect information about how visitors use our website. These cookies collect information in an anonymous form, including the number of visitors to the site, where visitors have come to the site from and the pages they visited on the site. This information is then used by Google to make reports for us and to help us improve the site. For more information visit: http://www.google.com/intl/en/policies/privacy/

Expiry: These cookies remain on your computer after the session has finished.

**Cookie has_js**

Optional? Yes

Purpose: Allows us to know if your browser has Javascript enabled and deliver content as appropriate.

Expiry: N/A

**Cookie cookie-agreed**

Optional? Yes

Purpose: Present if you have accepted use of cookies. Remembers your preference.

Expiry: Default period of the browser

**Cookie UserSession**

Optional? Yes

Purpose: Allows you to login by storing a unique identifier we can use to recognise you as a unique user.

Expiry: 1 Month

Our website may use social networking icons and sometimes embed video content from websites such as YouTube. When you visit a page with content embedded from, for example, YouTube, or click on a social network icon that takes you to that social network, you will be presented with third party cookies from YouTube or that site as applicable. We do not control these cookies and you need to check with the applicable third-party website for more information.

**How Can I Make A Choice About Cookies And My Privacy?**

On our website you can set your cookies preferences by clicking the "more info" link in the cookie banner, or when you wish to change a previously provided consent, you can access your preferences via the settings. On this page, you can withhold consent by removing the relevant tick in the tick boxes for analytical and social media- and advertising cookies. Please note that by opting out of these cookies, you do not opt out

of receiving advertising content altogether. You will instead receive general content that does not take into account your interests and preferences.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Plaintiff  also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____

DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434